UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Todd L. Anderson, | |
|     Plaintiff, | Case No.: 1:20-cv-04794 |
| v. | Judge John Robert Blakey |
| Rush Street Gaming, LLC, Rush Street Interactive LLC, Rush Street Interactive, LP, Neil Bluhm, and Greg Carlin, | |
|     Defendants | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Todd L. Anderson filed a six-count amended complaint against Defendants (Rush Street Gaming, LLC; Rush Street Interactive LLC; Rush Street Interactive, LP; Neil Bluhm; and Greg Carlin), alleging breach of contract (Count I), breach of fiduciary duty (Count II), conversion (Count III), unjust enrichment (Count IV), promissory estoppel (Count V), and constructive fraud (Count VI). [19]. Defendants move to dismiss Plaintiff's complaint in its entirety pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). [27]. For the reasons explained below, the Court grants in part and denies in part Defendants' motion.

**I.    Background**[1]

Through their partnership, All In Production, LLP, Plaintiff and his business partner launched and built the Heartland Poker Tour ("Heartland"), a televised poker

---

[1] The Court draws these facts from Plaintiff's Amended Complaint [19].

1

tour. [19] ¶¶ 25–27. After managing the tour for several years, Plaintiff and his business partner agreed to sell Heartland to Federated Sports & Gaming ("Federated"). *Id.* ¶ 36. Under the sale agreement, All In Production sold Heartland to Federated in exchange for $4.3 million and "tens of thousands" of shares in Federated. *Id.* ¶ 37.

Federated subsequently formed a new, wholly owned subsidiary, Federated Heartland, Inc. ("Federated Heartland"), to operate Heartland. *Id.* ¶ 38. After the sale, Plaintiff and his business partner continued to run Heartland's day-to-day operations. *Id.* ¶ 39. In late 2011, Federated failed to pay Plaintiff and his business partner the money it owed them from the sale, and Federated filed for chapter 11 bankruptcy. *Id.* ¶¶ 56–58.

The main investor in Federated, J.B. Pritzker, sent an email to Plaintiff, copying an individual named Richard Schwartz, that introduced Plaintiff to Rush Street, a company interested in purchasing Heartland. *Id.* ¶¶ 60–62. Rush Street, a company in the gaming industry, was founded by Defendants Bluhm and Carlin. *Id.* ¶¶ 43–44. Defendants Bluhm and Carlin subsequently partnered with Richard Schwartz, an individual with prior experience in the gaming industry, to launch a new subsidiary of Rush Street called Rush Street Interactive. *Id.* ¶¶ 47–48. Schwartz was eventually named President of Rush Street Interactive. *Id.* ¶ 51.

Plaintiff declined to partner with Rush Street. *Id.* ¶ 67. On June 13, 2012, an auction took place for substantially all of Federated's assets, including Heartland. *Id.* ¶¶ 68–69. Schwartz, acting on behalf of Rush Street, unsuccessfully bid $4 million to

2

acquire Heartland. *Id.* ¶¶ 71–72. After another company acquired Heartland, Plaintiff resigned from his position as President of Heartland. *Id.* ¶¶ 73–75.

Rush Street Gaming, LLC; Rush Street Interactive (which Plaintiff uses to refer to both Rush Street Interactive LLC and the possible successor Rush Street Interactive, LP); and Defendants Bluhm and Carlin (collectively, the "Rush Street Defendants") subsequently formed a new entity called Rush Street Productions, in preparation for their venture into televised poker. *Id.* ¶ 76. The Rush Street Defendants identified Plaintiff as a suitable candidate to run Rush Street Productions. *Id.* ¶ 77.

Schwartz contacted Plaintiff and, after identifying himself a junior executive in the Rush Street organization, discussed Plaintiff's ideas for televised poker. *Id.* ¶¶ 81–83. On July 16, 2012, Plaintiff met with Defendant Carlin, Schwartz, and another Rush Street officer to discuss prospects for a televised poker tour. *Id.* ¶¶ 87, 89. Later that month, Schwartz provided Plaintiff with a non-binding proposal (the "Term Sheet") to form a new joint venture entity that included an offer to provide Plaintiff with 1% of the common equity in Rush Street Interactive, vesting over four years. *Id.* ¶¶ 105–109. On July 27, 2012, Plaintiff responded with a counteroffer that increased his equity interest in Rush Street Interactive LLC to 3%, vesting over three years. *Id.* ¶¶ 113–114. After further discussions with a Rush Street officer, Plaintiff decided to accept the Rush Street Defendants' initial offer providing Plaintiff with a 1% equity interest. *Id.* ¶¶ 117–119.

In late July, Plaintiff contacted Schwartz by phone, and the two reached an

oral agreement regarding Plaintiff's employment and Plaintiff and Rush Street's joint venture. *Id.* ¶ 120. In the agreement, Plaintiff and the Rush Street Defendants agreed to the terms in Plaintiff's counteroffer, with two changes:

- Rush Street Interactive LLC would invest $1.25 million in the new Rush Street entity, a mid-point between the Term Sheet and the counteroffer;
- Plaintiff would have a 1% equity interest in Rush Street Interactive LLC, vesting over four years and subject to accelerated vesting in the case of a liquidity event or change of control.

*Id.* ¶ 125. The parties also agreed that Plaintiff would manage the new Rush Street entity and would be responsible for developing and launching a new poker tour, Poker Night in America. *Id.* ¶ 128. The agreement included all the material terms for the joint venture. *Id.* ¶ 129.

After Plaintiff and the Rush Street Defendants entered into the agreement, Defendant Carlin and another Rush Street officer sent welcome emails to Plaintiff. *Id.* ¶¶ 134–137. Schwartz later told Plaintiff that the Rush Street Defendants would prepare additional documentation memorializing the agreement. *Id.* ¶ 145.

On August 8, 2012, Plaintiff received a formal, written document, which provided that:

- Plaintiff would be employed as the president of a new Rush Street and Rush Street Interactive LLC subsidiary, Rush Street Productions;
- Plaintiff's employment would start on an agreed-upon date;
- Rush Street Interactive LLC would invest $1.25 million to fund Rush

4

> Street Productions' growth;
>
> - Plaintiff would own 33% of Rush Street Productions' common equity;
>
> - Plaintiff would own a 1% equity interest in Rush Street Interactive, which would vest in four equal installments of 0.25% beginning on the one-year anniversary of Plaintiff's start date and, assuming Plaintiff's continued employment, on each anniversary thereafter;
>
> - The vesting schedule for that 1% equity interest would accelerate so that Plaintiff's 1% equity interest would immediately and fully vest if Rush Street Interactive LLC went through a liquidity event or a change of control.

*Id.* ¶¶ 148–150. The agreement letter also stated that Plaintiff's equity interest remained subject to additional terms and conditions to be set forth in the Rush Street Interactive LLC and Rush Street Productions operating agreements. *Id.* ¶ 151.

On August 13, 2012, Plaintiff told Schwartz that he would need to see the operating agreements referenced in the agreement letter before signing. *Id.* ¶ 155. After Rush Street failed to provide the operating agreements, Schwartz told Plaintiff that he would receive a new letter memorializing the agreement. *Id.* ¶¶ 156–160. On August 21, 2012, after speaking to Defendant Carlin and Schwartz, Plaintiff officially started working with the Rush Street Defendants at his agreed upon annual salary of $200,000. *Id.* ¶ 162. Plaintiff began work without waiting for the operating agreement or for a revised agreement letter to be drafted. *Id.* ¶ 161. Plaintiff subsequently agreed to reduce his salary in 2017 based, in part, on his belief that he

5

would receive the promised 1% equity interest in Rush Street Interactive. *Id.* ¶ 200.

After Plaintiff entered into the agreement with the Rush Street Defendants, Schwartz repeatedly assured Plaintiff that he need not worry about the lack of formal documentation of the 1% equity interest, sharing that Schwartz's own 5% equity interest in Rush Street Interactive similarly was not memorialized. *Id.* ¶¶ 203, 205, 207–208. Schwartz told Plaintiff that the Rush Street Defendants would formalize Plaintiff's agreement after formalizing Schwartz's agreement. *Id.* ¶ 206.

To Plaintiff's knowledge, the Rush Street Defendants never prepared an executed operating agreement for either Rush Street Interactive LLC or Rush Street Productions. *Id.* ¶ 217. Neither the Rush Street Defendants nor Schwartz told Plaintiff that they had formalized their agreement with Plaintiff. *Id.* ¶ 218.

On or around January 1, 2019, the Rush Street Defendants converted Rush Street Interactive LLC into a limited partnership. *Id.* ¶ 220. Defendants established an operating agreement for Rush Street Interactive, LP, the converted entity, only. *Id.* All the issued and outstanding equity interests of Rush Street Interactive LLC were transferred to Rush Street Interactive, LP. *Id.* ¶ 221. The Rush Street Defendants did not provide Plaintiff with notice of the conversion or the agreement under which equity interests in Rush Street Interactive LLC transferred to Rush Street Interactive, LP; nor did they provide Plaintiff with a copy of the operating agreement for Rush Street Interactive, LP. *Id.* ¶¶ 222–223. Defendants did not document Plaintiff's 1% equity position in Rush Street Interactive. *Id.* ¶ 224.

In June 2020, after learning of an anticipated public offering by Rush Street

6

Interactive, Plaintiff sent a series to emails to Schwartz, Defendant Bluhm, and Defendant Carlin regarding his 1% equity interest. *Id.* ¶¶ 237, 243–245. On August 4, 2020, Defendant Carlin finally responded, copying Schwartz and Defendant Bluhm, to state that the Rush Street Defendants would not provide Plaintiff with the 1% equity interest in Rush Street Interactive. *Id.* ¶ 246.

Plaintiff subsequently filed the initial complaint in this matter on August 14, 2020. [1]. Plaintiff filed an amended complaint on September 15, 2020, alleging the following: breach of contract against Defendants Rush Street Gaming and Rush Street Interactive (Count I); breach of fiduciary duty against Defendants Bluhm and Carlin (Count II); and conversion (Count III), unjust enrichment (Count IV), promissory estoppel (Count V), and constructive fraud (Count IV) against all Defendants. [19]. On October 13, 2020, Defendants moved to dismiss all of Plaintiff's claims pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). [27].

## II.  Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," so the defendant has "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

7

550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)). Thus, threadbare "recitals of the elements of a cause of action" and mere conclusory statements "do not suffice." *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept a complaint's legal conclusions as true. *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 603 (7th Cir. 2019).

Where a plaintiff alleges fraud, he must meet Rule 9(b)'s heightened pleading standard. To plead "with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), a plaintiff must identify the, "who, what, when, where, and how" of the alleged fraud." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019).

**III. Analysis**

Defendants ask this Court to dismiss Plaintiff's first amended complaint in its entirety. This Court considers Defendants' arguments as to each claim below.

8

### A.     Count I: Breach of Contract

Count I of the first amended complaint alleges breach of contract by Rush Street and Rush Street Interactive. To properly allege a breach of contract, "whether oral or written," under Illinois law,[2] a Plaintiff must show "'the existence of a valid and enforceable contract, performance by the plaintiff, breach of the contract by the defendant, and resultant damages or injury to the plaintiff.'" *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 715 (N.D. Ill. 2017) (quoting *Sheth v. SAB Tool Supply Co.*, 990 N.E.2d 738, 754 (Ill. App. Ct. 2013)). The elements of a valid and enforceable contract under Illinois law include "offer, acceptance, and consideration." *LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737, 742 (N.D. Ill. 2011) (citing *Vassilkovska v. Woodfield Nissan, Inc.*, 830 N.E.2d 619, 624 (Ill. App. Ct. 2005)).

Here, Plaintiff alleges that he entered into a contract with Defendants Rush Street and Rush Street Interactive, that he performed under the contract, that Defendants Rush Street and Rush Street Interactive breached the contract, and that he suffered damages as a direct and proximate result of this breach. [19] ¶¶ 249–252. This Court begins its analysis by determining whether Plaintiff sufficiently pleads contract formation.

Plaintiff alleges that he entered into an oral employment agreement with Richard Schwartz, an individual who Plaintiff alleges had proper authority to enter into such agreements on behalf of Rush Street and Rush Street Interactive. *Id.*

---

[2] For purposes of this motion, the parties agree that Illinois law governs. *See* [28] at 2 n.1; [29] at 14–15.

9

¶¶ 120–124. Under the agreement, which incorporated certain terms from an earlier counteroffer by Plaintiff (and, by extension, the initial offer from the Rush Street Defendants), *id.* ¶¶ 114, 125, Plaintiff agreed to manage a new joint venture between himself and Rush Street Interactive, *id.* ¶ 109. As part of his management of the joint venture, to be majority owned by Rush Street Interactive, *id.*, Plaintiff would be responsible for developing and launching a new poker tour. *Id.* ¶ 128. In exchange, the Rush Street Defendants agreed to provide Plaintiff with a base salary of $200,000 and a 1% equity interest in Rush Street Interactive, intended to vest over four years and subject to accelerated vesting in the case of a change in control or a liquidity event. *Id.* ¶¶ 109, 125.

Defendants argue that these alleged terms fail to evidence a valid and enforceable contract for two reasons. First, Defendants invoke the Illinois Statute of Frauds. At the outset this Court notes that the "Statute of Frauds . . . is an affirmative defense" and that courts will grant a motion to dismiss on this basis "only if it is plain from the face of the complaint that the defense is meritorious." *Am. Kitchen Delights, Inc. v. Signature Foods, LLC*, No. 16-CV-08701, 2018 WL 1394032, at *5 (N.D. Ill. Mar. 20, 2018) (citing *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016)). Under the Statue of Frauds, the law requires that "an agreement that cannot be fully performed within one year" must be "in writing and signed by the party against whom enforcement is sought (or his authorized agent)." *Id.* (citing 740 Ill. Comp. Stat. 80/1). As a result, Defendants argue, Count I fails. [28] at 7. Not so.

10

If "an oral agreement *could potentially* be performed within a year, regardless of the parties' expectations or the actual course of events, then the [Statute of Frauds] will not bar its enforcement." *Church Yard Commons Ltd. P'Ship v. Podmajersky, Inc.*, 76 N.E.3d 96, 103 (Ill. App. Ct. 2017) (emphasis added). That is the case here. Although the agreement contemplated that Plaintiff's equity interest in Rush Street Interactive would vest over a four-year period, the acceleration clause provided for the possibility of full performance within less than one year.

Defendants, relying upon two Illinois cases, argue that this Court should not treat the agreement as one that could be performed within less than one year because it "plainly '*anticipates a relationship of long duration*.'" [34] at 5 (quoting *McInerney v. Charter Gold, Inc.*, 680 N.E.2d 1347, 1352 (Ill. 1997). But the cases cited by Defendants are inapposite. In *McInerney v. Charter Golf, Inc.*, the contract that "[i]nherently . . . anticipate[d] a relationship of long duration . . . longer than one year" was a lifetime employment contract. 680 N.E.2d at 1351–52. The Illinois Supreme Court held that "the better view" was "to treat the contract as one 'not to be performed within the space of one year from the making thereof,'" but the court's holding was specific to "the context of an employment-for-life contract." *Id.* (quoting 740 Ill. Comp. Stat. Ann. 80/1 (West 1994)). The contract at issue here can in no way be characterized as an employment-for-life contract.

*Silvestros v. Silvestros*, 563 N.E.2d 1084 (Ill App. Ct. 1990), the other authority Defendants rely upon, is also distinguishable. In *Silvestros*, the Illinois Appellate Court found that a contract with an acceleration clause providing for a "25-month

11

installment payment period" still fell within the scope of the state of frauds. 563 N.E.2d at 1087. But the acceleration clause at issue in *Silvestros* operated quite differently from the one here.

In *Silvestros*, the "contract" was an agreed order under which a judgment debtor agreed to pay off a $40,000 judgment over a period of 25 months. *Id.* at 1085. In the event the "defendant defaulted for more than 30 days in the payment of any installment," the acceleration clause permitted plaintiff "to declare the entire balance due and execute on the judgment." *Id.* at 1087. In other words, the acceleration served to *terminate* the agreement, thus making performance impossible. For this reason, the court held that "the acceleration clause did not serve to remove the 'agreed order' from the scope of the statute of frauds." *Id.* As alleged by Plaintiff here, however, the acceleration clause did not terminate the contract; rather, it made it possible for full performance to occur in less than one year. Accordingly, the Illinois Statute of Frauds does not bar Plaintiff's breach of contract claim.

Defendants next argue that "although the offer letter from Schwartz expressly conditioned the terms of [Plaintiff]'s offer on his 'agreement to timely execute' the letter and accompanying agreements, . . . neither he nor Schwartz ever executed or signed these agreements." [28] at 10. In other words, because "the clear intent of the parties" was that neither would be "legally bound until the execution and delivery of a formal agreement," no contract was formed in the absence of "such execution and delivery." *Id.* (quoting *Ceres Ill., Inc. v. Ill. Scrap Processing, Inc.*, 500 N.E.2d 1, 5 (Ill. 1986)). Both Schwartz's offer to Plaintiff and Plaintiff's counteroffer contained

12

the following as an express condition: "Parties work exclusively to negotiate definitive transaction documents reflecting above." [19-1]; [19-2]. Although neither the original offer nor the counteroffer was accepted, the alleged oral agreement between Plaintiff and Schwartz incorporated this language by reference. [19] ¶¶ 114, 125.

At this stage of the litigation, however, the Court cannot say that the "definitive transaction documents" language precludes any finding of contract formation. Although a subsequent letter from Schwartz to Plaintiff does state that the "offer is contingent upon your agreement to timely execute this letter, a written confidentiality agreement" and "an Invention and Copyright Agreement," [19-3] at 4, Plaintiff alleges that he received this letter *after* he had reached an oral agreement with Schwartz, [19] ¶¶ 120, 148. And it is this oral agreement that forms the basis for Plaintiff's breach of contract claim. Additionally, despite the lack of any formal agreement, Plaintiff officially started working with the Rush Street Defendants on August 21, 2012, and Defendants paid him his agreed upon annual salary of $200,000. *Id.* ¶¶ 161–162.

As to the other elements of Plaintiff's breach of contract claim, this Court finds (and Defendants do not contest) that Plaintiff has adequately pled performance, breach, and damages. Accordingly, this Court denies the motion to dismiss as to Count I of the amended complaint.

### B. Count II: Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty, a plaintiff must "allege a fiduciary duty and a breach of that duty that caused damages." *Sanders v. JGWPT Holdings,*

13

*LLC*, No. 14 C 9188, 2017 WL 2672300, at *2 (N.D. Ill. June 20, 2017). Absent a fiduciary duty "as a matter of law," a plaintiff "must plead facts showing that one party placed trust and confidence in the other so that the latter gained influence and superiority over the former." *Lane v. Money Masters, Inc.*, No. 14-CV-1715, 2015 WL 225427, at *10 (N.D. Ill. Jan. 15, 2015) (quoting *Simon v. Wilson*, 684 N.E.2d 791, 797 (Ill. App. Ct. 1997)). Here, Plaintiff alleges that he was "in a fiduciary relationship" with Defendants Bluhm and Carlin and that these Defendants breached their fiduciary duties towards Plaintiff causing him damages. [19] ¶¶ 253–257. These conclusory allegations, however, do not suffice.

In his response to the motion to dismiss, Plaintiff argues that Defendants Bluhm and Carlin owed him fiduciary duties as a matter of law under two theories. First, Plaintiff argues that Defendants Bluhm and Carlin owed fiduciary duties because they were in a joint venture with Plaintiff. [29] at 18. The legal principle here is correct; under Illinois law, "a fiduciary relationship 'exists as a matter of law between . . . members of a partnership or joint venture.'" *Doherty v. Country Faire Conversion, LLC*, 170 N.E.3d 589, 599 (Ill. App. Ct. 2020) (quoting *D'Attomo v. Baumbeck*, 36 N.E.3d 892, 913 (Ill. App. Ct. 2015)). The problem for Plaintiff is that, reading the facts in the light most favorable to him, nothing in the Complaint establishes that this rule would apply here. Nowhere in the amended complaint does Plaintiff allege that Defendants Bluhm and Carlin entered into a joint venture with Plaintiff, nor do the attached exhibits otherwise support such a conclusion.

14

Plaintiff also argues that Defendants Bluhm and Carlin owed him fiduciary duties as a matter of law, because he had a minority equity interest in Rush Street Interactive LLC, an LLC in which Defendants Bluhm and Carlin were controlling members. [29] at 18. But Plaintiff's argument here turns on Delaware LLC law and Plaintiff's complaint makes no mention of where the LLC in question was formed.

Even if this Court were to assume that the LLC was formed in Delaware, this Court could not conclude that Defendants Bluhm and Carlin owed Plaintiff fiduciary duties as a matter of law. Under Delaware law, only managers and controlling members owe fiduciary duties to minority members, unless the LLC agreement provides otherwise. *See Glidepath Ltd. v. Beumer Corp.*, No. 12220, 2019 WL 855660, at *18 & n.144 (Del. Ch. Feb. 21, 2019), *judgment entered*, (Del. Ch. 2019). Here Plaintiff has not pled facts that, if taken as true, would establish that Defendants Bluhm and Carlin were managers or controlling shareholders of Rush Street Interactive LLC.

Lastly, Plaintiff argues that Defendants Bluhm and Carlin owed him fiduciary duties as a matter of fact. Plaintiff, however, has not pled facts demonstrating a close relationship between himself and Defendants Bluhm and Carlin that might give rise to fiduciary duties.

Because Plaintiff has not sufficiently alleged that Defendants Bluhm and Carlin owed him fiduciary duties, either as a matter of law or a matter of fact, Count II of the amended complaint fails. Accordingly, this Court grants Defendants' motion to dismiss Count II

### C. Count III: Conversion

To state a claim for conversion under Illinois law, a plaintiff must allege: (1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's property; (2) plaintiff's right to the property; (3) plaintiff's right to immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property. *Desmond v. Taxi Affiliation Servs. LLC*, 344 F. Supp. 3d 915, 928 (N.D. Ill. 2018).

In his amended complaint, Plaintiff alleges that Defendants wrongfully maintained control over a 1% equity interest in Rush Street Interactive LLC; that he was entitled to this interest by contract; and that he made a demand upon Defendants for this interest. [19] at ¶¶ 125, 224–225, 230–232, 237, 243, 245–246. Because these facts properly allege conversion, this Court denies the motion to dismiss Count III.

### D. Count IV: Unjust Enrichment

Under Illinois law, unjust enrichment is "not an independent cause of action," *Sheridan v. iHeartMedia, Inc.*, 255 F. Supp. 3d 767, 781 (N.D. Ill. 2017) (quoting *Gagnon v. Schickel*, 983 N.E.2d 1044, 1052 (Ill. App. Ct. 2012), but rather "a condition brought about by fraud or other unlawful conduct," *Raquet v. Allstate Corp.*, 348 F. Supp. 3d 775, 787 (N.D. Ill. 2020) (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 735 (7th Cir. 2019)). Accordingly, an unjust enrichment claim "will stand or fall" with related claims founded "on the same improper conduct." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 720 (N.D. Ill. 2020) (quoting *Krug v. Am. Family Mut. Ins. Co.*, 227 F. Supp. 3d 942, 946 (N.D. Ill. 2016)). Here, Plaintiff rests his

16

unjust enrichment claim entirely upon his allegations of breach of fiduciary duty (Count II) and constructive fraud (Count VI). But, as discussed herein, both claims fail. So too must Plaintiff's unjust enrichment claim. This Court grants the motion to dismiss Count IV of the amended complaint.

### E. Count V: Promissory Estoppel

To state a claim for promissory estoppel under Illinois law, a "plaintiff must adequately allege that '(1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendant[], and (4) plaintiff relied on the promise to [his] detriment." *Zummo v. City of Chicago*, 345 F. Supp. 3d 995, 1009–10 (N.D. Ill. 2018) (alterations in original) (quoting *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 523–24 (Ill. 2009)), *aff'd*, 798 F. App'x 32 (7th Cir. 2020). And it is well established that a plaintiff alleging breach of contract may plead promissory estoppel in the alternative. *See Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 922 (N.D. Ill. 2016) (listing cases).

Here Plaintiff alleges that Schwartz, acting on behalf of Defendants Bluhm, Carlin, and Rush Street Interactive, promised him a 1% equity interest in Rush Street Interactive; that Schwartz made repeated assurances to Plaintiff not to worry about the fact that his 1% equity interest had not been memorialized; that he worked for Defendants, in part, due to his belief that he would receive the 1% equity interest; and that he voluntarily reduced his salary based, in part, on his belief that he would receive the 1% equity interest. [19] at ¶¶ 102, 109, 119, 132, 163, 200, 207–208.

17

Reading these facts in the light most favorable to Plaintiff, they suffice to allege the elements of promissory estoppel. This Court denies the motion to dismiss Count V.

### F. Count VI: Constructive Fraud

A claim of constructive fraud under Illinois law "requires the existence of a confidential or fiduciary relationship" between plaintiff and defendant. *Mongler v. Knight*, No. 18 C 2585, 2018 WL 5921318, at *3 (N.D. Ill. Nov. 12, 2018) (quoting *Joyce v. Morgan Stanley & Co.*, 538 F.3d 797, 800 (7th Cir. 2008)). This claim does "not require actual dishonesty or intent to deceive." *Danley v. Zydlo*, No. 16-cv-2872, 2018 WL 5388989, at *3 (N.D. Ill. Oct. 29, 2018) (quoting *LaSalle Nat'l Tr., N.A. v. Bd. of Dirs. of the 1100 Lake Shore Drive Condo.*, 677 N.E.2d 1378, 1383 (Ill. App. Ct. 1997)). Instead, a plaintiff alleging constructive fraud need only show that "defendant (1) breached the fiduciary duty he owed to plaintiff and (2) knew of the breach and accepted the fruits of the fraud." *Joyce*, 538 F.3d at 800 (quoting *Prodromos v. Everen Secs., Inc.*, 793 N.E.2d 151, 158 (Ill. App. Ct. 2003)).

In the Seventh Circuit, constructive fraud claims remain subject to Rule 9(b)'s heightened pleading requirements. *See Taylor v. Feinberg*, No. 08-CV-5588, 2009 WL 3156747, at *5 (N.D. Ill. Sept. 28, 2009) (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997)). To avoid dismissal under this standard, "the complaint must describe the 'who, what, when, where, and how'" of the alleged fraud." *Muskegan Hotels, LLC v. Patel*, 986 F.3d 692 (7th Cir. 2021).

Plaintiff's claim here fails. As discussed above in this Court's analysis of the breach of fiduciary duty claim, Plaintiff has not sufficiently alleged a fiduciary or

18

confidential relationship. Absent such a relationship, Plaintiff cannot allege constructive fraud. Accordingly, this Court grants the motion to dismiss Count VI.

### G. Notice to Defendants

In addition to challenging each of Plaintiff's claims, Defendants Rush Street Gaming, Bluhm, and Carlin seek to dismiss the claims against them under Federal Rule of Civil Procedure 8(a) because the amended complaint "lacks sufficient detail to put each defendant on notice of which claims are stated against them." [28] at 15.

But Rule 8's pleading standard is a "liberal" one. *McNichols v. Weiss*, No. 18 C 2125, 2018 WL 5778413, at *2 (N.D. Ill. Nov. 2, 2018). A plaintiff need only allege facts sufficient "'to raise a right to relief above the speculative level' and 'give the defendant fair notice' of what the claim is, 'and the grounds upon which it rests.'" *Gavin/Solmonese LLC v. Kunkel*, No. 16-cv-1086, 2016 WL 3612123, at *6 (N.D. Ill. July 6, 2016) (quoting *Twombly*, 550 U.S. at 555).

Plaintiffs amended complaint meets this standard, alleging facts sufficient to inform Defendants of the claims and their respective roles in relation to each count. Although the complaint does, at times, refer to Defendants collectively, Rule 8 does not preclude such lumping where, as here, a plaintiff alleges that multiple defendants "engaged in precisely the same misconduct." *Slep-Tone Entm't Corp. v. Coyne*, 41 F. Supp. 3d 707, 714 (N.D. Ill. 2014).

19

## IV. Conclusion

This Court grants in part and denies in part Defendants' motion to dismiss [27]. This Court dismisses without prejudice Counts II, IV, and VI, but denies the motion to dismiss Counts I, III, and V.

Dated: September 28, 2021

                                                Entered:

                                                _____
                                                John Robert Blakey
                                                United States District Judge